POWELL v. STEPHENS et al.

(Court of Civil Appeals of Texas. Austin. June 18, 1913. On Motions for Rehearing, Feb. 11, 1914.)

1. MORTGAGES (§ 290*)—MORTGAGED PROPERTY.

When a mortgagor makes successive sales of different portions of the mortgaged premises, and subsequent purchasers have either actual or constructive notice of prior sales, equity will require the tracts of land to be sold in the inverse order of their alienation when the mortgage lien is foreclosed.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 791–805; Dec. Dig. § 290.*]

2. MORTGAGES (§ 290*)—MORTGAGED PROPERTY.

When a mortgagor reacquires a portion of the land which he has sold, those who have purchased from him after he sold the land so reacquired have the right to have the reacquired tract first sold on foreclosure of the mortgage.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 791–805; Dec. Dig. § 290.*]

3. VENDOR AND PURCHASER (§ 231*)—BONA FIDE PURCHASERS—CONSTRUCTIVE NOTICE—RECORDS.

Subsequent purchasers of parts of a tract of mortgaged property are charged with constructive notice of the rights of previous purchasers, whose conveyances are of record, to have the lands alienated last first sold for the satisfaction of the vendor's mortgage.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 43, 55, 487, 513–539; Dec. Dig. § 231.*]

4. MORTGAGES (§ 291*)—RIGHTS OF PARTIES.

The owner of a large tract of land, which was subject to a mortgage, conveyed part of the property to one Vanhoose, receiving vendor's lien notes in payment. These notes he pledged to secure a debt. Afterwards Vanhoose reconveyed to the mortgagor upon condition that the notes be canceled. Thereafter the mortgagor agreed to assign the Vanhoose notes to intervener, if she would lend him money to redeem them. While the mortgagor did not use the money borrowed from intervener to redeem the notes from his creditor, he subsequently redeemed them, and delivered them to intervener. *Held* that, as the pledgee of the notes could have insisted, as against subsequent purchasers, that their land should first be sold to satisfy the common mortgage, and as the mortgagor had the right to make the contract he did, intervener, upon foreclosure of the original mortgage, may demand that the lands last alienated be first sold to satisfy it.

[Ed. Note.—For other cases, see Mortgages, Dec. Dig. § 291.*]

5. MORTGAGES (§ 290*)—RIGHTS OF PARTIES.

The fact that intervener's money was not used in defraying the mortgagor's debt for which the vendor's lien notes were pledged, and that, when intervener acquired her rights, the deed reconveying the land to the mortgagor was of record, will not impair them, particularly where it did not appear that subsequent purchasers changed their position, or paid out any money upon the assumption that such deed vested in the mortgagor the absolute title to the land.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 791–805; Dec. Dig. § 290.*]

Appeal from District Court, Coleman County; John W. Goodwin, Judge.

Action by W. H. Stephens and others against E. E. McClain, in which Mrs. M. E. Powell intervened. From the judgment, the intervener appeals. Reversed and remanded, with directions.

See, also, 151 S. W. 333.

C. L. McCartney, of Brownwood, for appellant. T. C. Wilkinson, of Brownwood; and Critz & Woodward, Woodward & Baker, Snodgrass & Dibrell, and Weatherred & McDaniel, all of Coleman, for appellees.

KEY, C. J. W. H. Stephens, as assignee of the Drought & Co. notes and mortgage, brought this suit against E. E. McClain and all subsequent purchasers under him, seeking a recovery upon the notes and a foreclosure of the mortgage lien. Some of the defendants did not answer; others did, but it is not necessary to state anything more concerning the pleadings, except to say that the answer of Mrs. Powell, who alone has appealed, raised the issue and presented the contention that she was substituted, by contract and subrogation, to the rights of Walker, Smith & Co., as to four of the vendor lien notes against the land held by them as collateral security. With the foregoing preliminary statement, and reserving the right to add thereto, if deemed necessary, we copy the following statement from appellant's brief, which is substantially correct:

"E. E. McClain was the owner of 1,476 acres of land out of the Joseph Leflore survey in Coleman county, Tex., and on the 1st day of August, 1906, McClain and wife executed a deed of trust in favor of H. P. Drought & Co. to secure four notes for $200 each, and one note for $2,700, together with some smaller interest notes. Two of these notes were paid; the remainder of the notes, together with the lien securing same, were transferred by H. P. Drought & Co. to W. H. Stephens, who brought suit to foreclose the lien on said notes. Subsequent to the execution of this trust deed McClain sold off this tract of land in small quantities to different purchasers, as follows:

"On August 24, 1906, he conveyed to P. D. Vanhoose 250 acres, and retained a lien on this 250 acres to secure the payment of ten purchase-money notes for the sum of $250 each, due October 1, 1907, and October 1st each year following for nine additional years.

"On September 25, 1906, McClain sold 192⁹/₁₀ acres to M. R. Cheatam, and retained a vendor's lien to secure the payment of ten purchase-money notes of $110 each, due from one to ten years after date, respectively.

"On September 25, 1906, McClain sold to T. N. Monroe 100 acres out of said large tract, and retained a lien to secure the payment of five purchase-money notes aggregating $800.

"September 25, 1906, McClain sold and conveyed to J. J. and G. H. Vowell 200 acres out of said large tract, and retained a lien to secure eight notes for the sum of $200 each.

"November 1, 1906, McClain sold to T. T. Cooper 100 acres out of said larger tract, and retained a lien to secure ten notes for $66.- 66⅔ each.

"October 12, 1906, McClain conveyed to J. M. Garner 274 acres out of said larger tract, and retained a lien to secure ten notes for the sum of $178.16½ each.

"November 1, 1906, McClain sold to J. S. Gibbens 200 acres out of said larger tract, and retained a lien to secure ten notes for $133.33⅓ each.

"The M. R. Cheatam notes became the property of W. N. Cameron, who sought to foreclose same in this cause. The Monroe notes were transferred to W. H. Stephens, who sought to foreclose two of them in this cause. Stephens likewise became the owner of five of the Vowell notes, and sought to foreclose same in this cause. Mrs. Anna Boog-Scott became the owner of eight of

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

163 S.W.—43

the Cooper notes, and sought to foreclose same in this cause. W. H. Stephens became the owner of five of the Garner notes, and sought to foreclose same in this cause. Mrs. Anna Boog-Scott became the owner of eight of the Gibbens notes, and sought to foreclose same in this cause.

"After P. D. Vanhoose bought said 250 acres on the 1st day of January, 1907, he conveyed it to J. H. Quinn, and Quinn assumed the payment of the ten notes executed by Vanhoose for the original purchase money. On December 1, 1907, J. H. Quinn conveyed this 250 acres to Joe Toland and E. E. McClain, and said deed recited as consideration therefor the cancellation of the notes given by Vanhoose to McClain on the 24th of October, 1906.

"On the 16th day of April, 1908, E. E. McClain conveyed to Joe Toland his interest in the Vanhoose tract of 250 acres, and said deed contained a recital that Joe Toland assumed all the indebtedness against said 250 acres. On January 29, 1908, E. E. McClain executed a deed of trust in favor of Mrs. M. E. Powell on said Vanhoose tract of 250 acres to secure Mrs. Powell in the payment of a note for $1,050, executed by the said McClain to the said Mrs. Powell, which note was sued upon by Mrs. Powell in said cause.

"On February 17, 1909, Joe Toland executed a deed of trust on this Vanhoose tract in favor of the Coleman National Bank, to secure a note for $2,500, due 90 days after date. The Coleman National Bank sold said 250 acres under its deed of trust, and purchased same thereunder on the 4th day of April, 1911.

"From the year 1906 up to the year 1909, E. E. McClain was indebted to Walker, Smith & Co. for merchandise in the sum of about $2,800, and to secure said indebtedness McClain indorsed over to Walker, Smith & Co. the ten Vanhoose notes for $250 each; said indorsement and delivery being somewhere between September 27, 1906, and May, 1907. McClain paid $1,600 on the Walker-Smith indebtedness on the 15th day of March, 1909, and on the 1st of November, 1909, he paid the balance, amounting to $1,700, and Walker, Smith & Co., delivered back to McClain these Vanhoose notes which had been held by them as security, and this delivery back to McClain was made after December 31, 1909.

"The $1,050 was loaned by Mrs. Powell to McClain on January 29, 1908, and prior to the actual loan of the money on that date it was agreed by and between McClain and Mrs. Powell that the latter should have four of the Vanhoose notes to secure her in the payment of the loan of $1,050. When McClain negotiated with Mrs. Powell for the loan, he represented to her that the Vanhoose notes were pledged, and that he wished to borrow $1,050 from her to redeem these notes, and, when they were redeemed, she should hold the first four of said notes for $250 each to secure her for said loan. Mrs. Powell relied upon this representation and promise, and would not have made the loan but for same. As a matter of fact the money obtained from Mrs. Powell was not used by McClain to redeem the Vanhoose notes from Walker, Smith & Co. He did not redeem said notes and get them back for more than a year after he secured this $1,050 from Mrs. Powell, and did not actually deliver them to Mrs. Powell until the winter or early spring of 1911. When McClain agreed with Mrs. Powell that she should have the Vanhoose notes to secure her on the note for $1,050, the 250 acres of land for which the Vanhoose notes were given had been reconveyed, and the title vested in Joe Toland and E. E. McClain jointly, and recited a cancellation of the Vanhoose notes; but the Vanhoose notes at the time of said reconveyance were actually in the hands of Walker, Smith & Co., and held by them as security for McClain's indebtedness. Mrs. Powell had no actual notice of this reconveyance or the attempted cancellation of said notes; the only notice to her, if any, being the recording of the deed. The indebtedness of McClain to Mrs. Powell was never paid, which at the time of the judgment herein amounted to $1,575, and was secured by the deed of trust given in her favor on said 250 acres of land and by the pledge of the four Vanhoose vendor's lien notes.

"The foregoing statement is taken from the court's findings of fact.

"Two issues of fact were by agreement of all parties submitted to a jury, and all other issues of fact were submitted to the court, and in response to those submitted to a jury they found that it was agreed between McClain and Mrs. Powell that the latter should have four of the Vanhoose notes as security for said loan, and that said agreement was made prior to the execution of said note for $1,050.

"The trial court in his conclusions of law held that the undivided one-half of the Vanhoose 250 acres, upon which Mrs. Powell held her liens, should first be sold to satisfy the H. P. Drought & Co. deed of trust, and that the other tracts hereinbefore referred to should be sold off in the inverse order of their alienation. And judgment was rendered in favor of W. H. Stephens for $4,653.30, with foreclosure of the H. P. Drought & Co. lien on the entire 1,476 acres, and ordering the Vanhoose tract, upon which Mrs. Powell claimed her lien, to be first sold before any of the remainder of said tract was sold.

"The findings of fact in favor of Mrs. M. E. Powell are based upon her pleadings filed in the case, she having pleaded that she loaned said money to McClain on the faith of the aforesaid representations, and that she acquired all outstanding rights and equities in said Vanhoose vendor's lien notes, and

asked that the same be foreclosed, and that said 250 acres be last sold under the foreclosure of the H. P. Drought & Co. deed of trust.

"The defendant Mrs. M. E. Powell in due time filed her motion for new trial, setting up as grounds for a new trial all the matters covered by the hereinafter mentioned assignments of error. This motion was overruled on the 4th day of May, 1912, to which Mrs. M. E. Powell duly excepted, and gave notice of appeal to this court as provided by law. Appeal bond was filed and appeal perfected May 20, 1912."

No statement of facts has been brought up, and the appeal is submitted on the findings of fact by the court and jury.

## Opinion.

Appellant assigns as error the action of the trial court in decreeing that an undivided half interest in the Vanhoose 250 acres of land should be first sold for the purpose of paying off the judgment rendered in favor of the plaintiff upon the prior mortgage debt against the entire tract, and in not holding and decreeing that appellant's lien was superior to the rights of the subsequent purchasers from McClain, and requiring the lands so purchased by them to be first sold in satisfaction of the plaintiff's mortgage. Controverting the foregoing contention, it is insisted on behalf of appellees that, inasmuch as the Vanhoose land had been reconveyed to McClain in consideration of the latter's cancellation of the Vanhoose notes prior to the time appellant made her contract with and loaned her money to McClain, and as the money so loaned was not used by McClain to pay his indebtedness to Walker, Smith & Co., and thereby redeem the Vanhoose notes from pledge, the court ruled correctly when it held that the appellees who purchased from McClain subsequent to the purchase made by Vanhoose were entitled to have an undivided half interest in the Vanhoose tract first sold for the purpose of paying off the original mortgage upon the entire tract.

[1-4] After extended and careful consideration of the case, we have reached the conclusion that the contention urged on behalf of appellant is correct. It is well settled in this state, and perhaps in all other jurisdictions where equity is administered, that, where a mortgagor makes successive sales of different portions of the mortgaged premises, and subsequent purchasers have either actual or constructive notice of prior sales, when the mortgagee goes into court to enforce his lien equity requires that the respective tracts be sold in the inverse order of their alienation. That doctrine was announced as early as Ayres v. Cayce, 10 Tex. 101, and has been repeatedly applied in subsequent cases. It is also well settled in this and other states that, when such a mortgagor reacquires a portion of the land which he has sold, those who have purchased from him after he sold the land so reacquired have the right, as against him, to have the reacquired tract first sold in satisfaction of the mortgage. But in this case, at the time the Vanhoose tract was reconveyed to McClain, the Vanhoose notes were pledged to Walker, Smith & Co., and they were secured by a prior lien upon the land, which was not affected by the transaction between McClain and Vanhoose which resulted in Vanhoose's reconveying to McClain the land in consideration of McClain's cancellation of the notes so pledged. Therefore at the time of the transaction between Mrs. Powell and McClain, in so far as the rights of Walker, Smith & Co. were concerned, and for the purpose of securing McClain's indebtedness to them, the Vanhoose notes were not canceled, and constituted a valid prior lien against the land. The question then arises, did McClain have the power, as against the rights of those who purchased from him subsequent to his sale to Vanhoose, to enter into a contract with Mrs. Powell, the effect of which would be, as soon as the Vanhoose notes were redeemed from Walker, Smith & Co., to vest in her similar rights to those held by Walker, Smith & Co. in four of the Vanhoose notes? If he had the power to accomplish that result through the medium of a contract with Mrs. Powell we think the facts show that he did so, and that Mrs. Powell is not required to invoke the doctrine of subrogation in order to sustain her contention. It then becomes pertinent to determine what were the rights of such subsequent purchasers. When they purchased, they had notice of the fact that McClain had previously made a sale to Vanhoose, and the law charged them with notice of the fact that, when the original mortgage against the entire property was enforced, it would be the right of Vanhoose, or those holding under him, to have the land which the subsequent vendees were purchasing first sold in satisfaction of the mortgage, unless it should thereafter be reacquired by McClain free from the intervening rights and equities of all other persons. And it must also be kept steadily in mind that, after such subsequent purchases were made, those purchasers had no further dealings with McClain, and acquired no rights or equities upon the assumption that he had reacquired and become the absolute owner of the Vanhoose land.

Keeping these facts in mind, it seems to us that it must necessarily be held that the subsequent purchasers referred to who are now contesting the claims of Mrs. Powell, appear without any equities in their favor, and therefore have no right, either legally or equitably, to object to Mrs. Powell's being substituted to all the rights which Walker, Smith & Co. held against McClain, whether such substitution be the result of contract or subrogation. And, this being true, we

think the case must be decided in favor of Mrs. Powell. In other words, we think the facts found by the court and jury show that a contract was made between McClain and Mrs. Powell, by which it was intended by both parties that the rights which Walker, Smith & Co. had in the four Vanhoose notes should be vested in Mrs. Powell, and that McClain would take whatever steps were necessary to accomplish that result; and, such being the contract, Mrs. Powell has the right as against McClain, Walker, Smith & Co., and the subsequent purchasers from Mc-Clain, to have that agreement enforced, not-withstanding the fact that McClain, in viola-tion of his promise, did not apply the money received from Mrs. Powell to the redemption of the Vanhoose notes, but used it for some other purpose. If, after the Vanhoose land was reconveyed to McClain, the subsequent purchasers referred to had taken a mortgage from McClain thereon, or for a valuable consideration had acquired any other equity therein, then they might have the right to object to any contract between McClain and Mrs. Powell, the result of which would im-pair the equity so acquired by them; and they might also be in a position to contend that Mrs. Powell was not subrogated to the rights of Walker, Smith & Co., because of the fact that the money furnished by her was not used in redeeming the Vanhoose notes.

As to the latter point, it is not deemed nec-essary to make any definite ruling, because, as said before, as the complaining appellees have no equities, Mrs. Powell has the right to enforce the contract which she made with McClain. And this right is independ-ent of the question of subrogation, and aris-es out of and flows from the terms of the contract between McClain and her. The facts show that McClain finally paid the debt for the security of which the notes had been pledged to Walker, Smith & Co., thereby re-deeming them, and thereafter, in pursuance of his contract with Mrs. Powell, he deliver-ed to her four of the notes, each of which retained a vendor's lien on the land in ques-tion.

Mrs. Powell asserted her rights under the contract referred to, and sought to have the lien secured by the notes established in her favor, and she now contends, and we sustain the contention, that, as against those who purchased after Vanhoose, it is her right to have the lands so purchased first sold for the purpose of satisfying the original mort-gage, which was foreclosed in favor of the plaintiff.

[5] In appellees' brief some stress is laid upon the fact that at the time Mrs. Powell acquired her rights the deed reconveying the land to McClain, and reciting a cancel-lation of the Vanhoose notes, was of record, and therefore, so it is contended, she was charged with constructive notice of that in-strument. Conceding the fact of such notice,

we fail to see its materiality in determining the rights of the parties. As said before, it was not shown that the objecting appellees had paid out any money, parted with any-thing of value, or acquired any equities upon the assumption that the deed referred to vested in McClain absolute title to the land; and, such being the case, they had no right to object to the contract between Mrs. Pow-ell and McClain, which contract does not impair any right they had at the time it was made. At that time the Vanhoose notes were outstanding charges against the land for the purpose of securing a particular debt owing by McClain, and it works no injury to the appellees for that security to be shifted from one of McClain's creditors to another, and that is all that Mrs. Powell is asking to have done. If, when McClain paid his debt to Walker, Smith & Co., the latter had as-signed the notes to Mrs. Powell, or if he had used the money loaned him by her for the purpose of paying Walker, Smith & Co., as he agreed to do, there could have been no question about her right, as against the objecting appellees, to enforce the lien by which those notes were secured; and we hold that McClain had the power, as against the rights of said appellees, to make a con-tract which would have the same result, and we also hold that such contract was made.

So we conclude that so much of the judg-ment and decree of the trial court, as re-quired an undivided half interest in the Vanhoose 250-acre tract of land first sold for the payment of the judgment rendered in favor of the plaintiff Stephens should be set aside, and judgment here rendered re-quiring all of the other tracts of land refer-red to in the decree to be sold for the pur-pose referred to before the sale of any of the Vanhoose tract; and it is so ordered.

Reversed and reformed.

On Motions for Rehearing.

Several of the appellees in this case have filed motions for rehearing, all of which have been duly considered, and the conclusion reached that they should be overruled. Ap-pellees Mrs. Boog-Scott and W. H. Stephens present the contention that, inasmuch as they acquired certain vendor's lien notes given for the purchase money of some of the subdivi-sions of the tract of land that was sold by McClain after the deed by which a half in-terest in that tract had been conveyed back to McClain, therefore, as between them and Mrs. Powell, the appellant, they are entitled to protection as innocent purchasers, or bona fide holders for value, and without notice. We stated in our original opinion that the record failed to show that the appellees had paid out anything of value upon the faith of the deed referred to, or had otherwise ac-quired any equities as against Mrs. Powell, and a re-examination of the record confirms that statement. In the first place the appel-lees referred to did not assert any such right

of equitable protection in their pleadings, and in the second place the record fails to show such facts as would render such plea available. It fails to show that the appellees referred to paid out any money or parted with anything of value in order to acquire the ownership of the notes upon which they seek to base their superior equity, nor does it show that they did not in fact have actual knowledge, before and at the time they acquired the notes referred to, that Walker, Smith & Co. held some of the original purchase-money notes against the Vanhoose tract. Furthermore, even if the complaining appellees were misled by the conduct of McClain and Quinn in putting on record a deed reciting the fact that the purchase-money notes referred to were canceled, we fail to perceive how that fact could affect Walker, Smith & Co., or any one else who had been substituted to their rights.

In the motion for rehearing filed by the Coleman National Bank (which bank took a deed of trust on the Vanhoose tract after the deed had been recorded conveying that tract back to McClain and Joe Tolson, and purchased the land when it was sold under that deed of trust) it is contended that the bank is entitled to protection as an innocent purchaser, because (1) the appellant, Mrs. Powell, acting by her attorneys, has filed an agreement admitting that the rights of the bank are superior to the rights of appellant, and (2) because the findings of the trial court show that the bank is a bona fide purchaser for value, and entitled to protection as such. As to the first point, the transcript in this case is voluminous. We find nothing in the index indicating that it contains the written agreement referred to, and counsel for the bank have failed to refer to any page of the transcript showing the existence of such agreement, and, if such agreement was contained in a separate paper, and filed in this court, we have no recollection of ever seeing it, and it cannot now be found with the record. When we look to the facts, the bank is about in the same condition as the other appellees who are claiming protection as bona fide holders for value. The findings of fact do not show that the bank parted with anything of value on the faith of the deed which recited a cancellation of the original Vanhoose notes, nor do such findings show that the bank did not have actual knowledge of the fact that the notes were then held by Walker, Smith and Co., and could not be canceled by the execution and registration of the deed referred to. Under the four Vanhoose notes which were delivered by McClain to Mrs. Powell in pursuance of his contract, she acquired the lien on the entire Vanhoose tract by which those notes were secured to the extent of her debt, but no further; and that lien is superior to the rights of all other litigants except those of the appellee W. H.

Stephens, which are founded upon the original blanket mortgage lien upon the entire 1,476 acres. As to that lien upon the entire tract, the rights of appellee Stephens are superior to those asserted by Mrs. Powell, as well as all the other litigants; but the rights asserted by Stephens under purchase-money notes given for certain subdivisions of the entire tract, which were subsequently conveyed by McClain to certain purchasers, are inferior, and must yield to the superior right of Mrs. Powell growing out of her contract with McClain by which she was, in effect, substituted to the rights of Walker, Smith & Co. in the Vanhoose purchase-money notes.

After our former opinion was written, and judgment rendered in accordance with it, this court, of its own motion, set that judgment aside, and rendered judgment reversing the case, with instructions to the trial court to render a judgment in conformity with the views expressed in this court's opinion, and that judgment will be permitted to stand. However, we deem it proper to say that, if the parties should agree upon a different judgment, the court will have the power to render the judgment so agreed upon, regardless of the fact that the case is reversed with instructions.

Motions for rehearing overruled.